1

2

3

4                          UNITED STATES DISTRICT COURT

5                          EASTERN DISTRICT OF CALIFORNIA

6

7    OTILIO B.F.,                                   No.  1:25-cv-01398-KES-EPG (HC)

8                    Petitioner,
                                                    ORDER GRANTING MOTION FOR
9         v.                                        PRELIMINARY INJUNCTION

10   TONYA ANDREWS, Administrator,                  Doc. 2
     Golden State Annex Detention Facility;
11   SERGIO ALBARRAN, Acting Field Office
     Director of the San Francisco Immigration
12   and Customs Enforcement Office; KRISTI
     NOEM, Secretary of the United States
13   Department of Homeland Security;
     PAMELA BONDI, Attorney General of the
14   United States,

15                   Respondents.

16

17          Petitioner Otilio B.F. is an immigration detainee who was ordered released on bond by an

18   immigration judge on August 27, 2025.[1]  Despite the immigration judge's order, petitioner

19   remains in detention pending appeal to the Board of Immigration Appeals ("BIA") due to the

20   Department of Homeland Security's ("DHS's") invocation of an automatic stay regulation,

21   8 C.F.R. § 1003.19(i)(2).

22          On October 20, 2025, petitioner filed a petition for writ of habeas corpus, Doc. 1, and a

23   motion for temporary restraining order, Doc. 2, arguing that the immigration judge properly

24   released him following a bond hearing pursuant to 8 U.S.C. § 1226(a) and that the automatic stay

---

[1] As recommended by the Committee on Court Administration and Case Management of the
Judicial Conference of the United States, the Court omits petitioner's full name, using only his
first name and last initial, to protect sensitive personal information.  *See* Memorandum re: Privacy
Concern Regarding Social Security and Immigration Opinions, Committee on Court
Administration and Case Management, Judicial Conference of the United States (May 1, 2018),
https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1   regulation violates the Due Process Clause.  On October 28, 2025, respondents filed an

2   opposition, in which they largely do not address petitioner's arguments and instead argue that 8

3   U.S.C. § 1226(c)(1)(A) serves as an alternative basis to find petitioner mandatorily detained.

4   Doc. 10.  For the reasons set forth below, petitioner's motion for temporary restraining order,

5   which the Court converts to a motion for preliminary injunction, is granted.

6       **I.    Background**

7       Petitioner was born in Mexico in 2004 but entered the United States with his parents when

8   he was two years old.  Doc. 1-2, Ex. A, B.F. Decl. at ¶ 2.  He has resided in the United States ever

9   since, most of the time in the same community in the Central Valley.  Doc. 1-3, Ex. B., Kyle

10  Decl. at ¶ 3.  In 2021, he stopped attending school to work and support his mother, who has heart

11  problems.  Doc. 1-2, Ex. A, B.F. Decl. at ¶ 2.  In 2024, he returned to school to complete his

12  GED, but that process has been interrupted by his present detention.  *Id.*

13      Petitioner is engaged to marry his partner, and they have a two-year old son together.  *Id.*

14  ¶ 5.  Both petitioner's fiancée and his son are U.S. citizens.  Doc. 1-3, Ex. B., Kyle Decl. at ¶ 4.

15  Petitioner has a pending application for a U Visa, and his attorney asserts that petitioner is also

16  eligible for other forms of relief from removal, for which he intends to apply.  *Id.* ¶ 8.

17      Petitioner was arrested in May 2025 on a domestic violence offense involving his fiancé.

18  Doc. 1-2, Ex. A, B.F. Decl. at ¶ 7.  In that state matter, petitioner was released from custody

19  following his arrest and was told to appear for a state court hearing two weeks later.  Doc. 1-3,

20  Ex. B., Kyle Decl. at ¶ 4.  On June 2, 2025, petitioner attempted to attend his initial state court

21  hearing.  Doc. 1-3, Ex. B., Kyle Decl. at ¶ 6.  Prior to the hearing, immigration agents arrested

22  him as he was exiting an elevator at the state courthouse.  *Id.*  Petitioner indicates that agents

23  pushed him to the ground, handcuffed him, and told him that they had a warrant for his arrest.  *Id.*

24  Immigration authorities did not allow petitioner to attend his state court hearing.  *Id.*  They

25  subsequently transported petitioner to Golden State Annex, a detention facility in McFarland,

26  California, where he remains detained.  *Id.* ¶ 7.

27      An immigration judge held a bond hearing on August 27, 2025, and granted petitioner

28  release on bond.  Doc. 10-1, Ex. 8.  In doing so, the immigration judge considered petitioner's

May 2025 arrest as well as evidence of his lengthy residence in the United States, his family and community ties, and his paths to lawful immigration status.  *Id.*; *see* Doc. 1-4, Ex. C.  The immigration judge concluded that petitioner was not a flight risk or danger to the community.  Doc. 10-1, Ex. 8; *see In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006).  The immigration judge rejected DHS's argument that petitioner was subject to the mandatory detention scheme of 8 U.S.C. § 1225(b)(2), found that petitioner was entitled to release on bond under 8 U.S.C. § 1226(a), and set a bond of $2,500.  Doc. 10-1, Ex. 8.  *Id.*

Petitioner's family attempted to post bond, but before they could do so, DHS filed a notice of intent to appeal pursuant to 8 C.F.R. § 1003.19(i)(2).  Doc. 1-3, Ex. B., Kyle Decl. at ¶ 6.  That filing resulted in an automatic stay of the immigration judge's bond order pending appeal, meaning that petitioner would not be released on bond pursuant to that order unless and until the Board of Immigration Appeals ("BIA") affirmed the decision.  *Id.*; *see* 8 C.F.R. § 1003.19(i)(2).

On September 5, 2025, the BIA decided *Matter of Yajure Hurtado* and held that all noncitizens present in the country who entered without lawful admission are subject to mandatory detention under 8 U.S.C. § 1225(b)(2).  *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).  The immigration judge in petitioner's immigration case thereafter issued a memorandum stating:  "In light of the intervening authority of *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), the immigration court lacked authority to set bond for the respondent. The Board should reverse the order entered on August 25, 2025, and find that respondent is subject to mandatory custody."  Doc. 10-1, Ex. 8.

## II.      Conversion to a Motion for Preliminary Injunction

When the Court set a briefing schedule on the motion, it ordered the parties to state their position on whether the motion for temporary restraining order should be converted to a motion for preliminary injunction and whether the parties requested a hearing on the motion.  Doc. 4.  Neither party objected to converting the motion to one for a preliminary injunction or requested a hearing.  *See* Docs. 10, 11.  Given that the standards for issuing a temporary restraining order and a preliminary injunction are the same, *see Stuhlbarg Int'l Sales Co. v. John D. Bush & Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001), and respondents had notice and opportunity to respond in

1    opposition, *see* Doc. 10, petitioner's motion is converted to a motion for preliminary injunction.

2    **III.    Legal Standard**

3        "A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter*

4    *v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–

5    90 (2008)).  "A plaintiff seeking a preliminary injunction must establish that he is likely to

6    succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary

7    relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."

8    *Id.* at 20 (citing *Munaf*, 553 U.S. at 689–90; *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S.

9    531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982)).  "Likelihood of

10   success on the merits is a threshold inquiry and is the most important factor."  *Simon v. City &*

11   *Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting *Env't Prot. Info. Ctr. v.*

12   *Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)).  "[I]f a plaintiff can only show that there are serious

13   questions going to the merits—a lesser showing than likelihood of success on the merits—then a

14   preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's

15   favor, and the other two *Winter* factors are satisfied."  *Friends of the Wild Swan v. Weber*, 767

16   F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

17   **IV.    Discussion**

18       Petitioner argues that 8 U.S.C. § 1225(b)(2)(A) does not apply to him, that 8 U.S.C.

19   § 1226(a) and its implementing regulations permit his release on bond, and that the automatic stay

20   pursuant to 8 C.F.R. § 1003.19(i)(2) violates due process.  *See* Doc. 2.  Respondents' opposition

21   does not address those arguments; instead, respondents argue that petitioner's mandatory

22   detention can be upheld under 8 U.S.C. § 1226(c)(1)(A).  *See* Doc. 10.  Because respondents do

23   not address petitioner's arguments that 8 U.S.C. § 1225(b)(2) does not apply and that the

24   automatic stay provision of 8 C.F.R. § 1003.19(i)(2) violates due process, the Court first

25   addresses respondents' argument that 8 U.S.C. § 1226(c)(1)(A) mandates petitioner's detention.

26       **a.  Section 1226(c)(1)(A) Does Not Apply to Petitioner.**

27       Section 1226(c)(1)(A) provides that the "Attorney General shall take into custody any

28   alien who [] is inadmissible by reason of having committed any offense covered in section

1182(a)(2) of this title." 8 US.C. § 1226(c)(1)(A).  Respondents acknowledge that petitioner has

not been convicted of an offense and that the immigration judge ordered petitioner released on

bond under section 1226(a), not detained under section 1226(c).  Nonetheless, respondents rely

on 8 U.S.C. § 1182(a)(2)(A)(i) as purportedly authorizing petitioner's immigration detention.

Respondents point to the part of that statute that provides that "any alien . . . who *admits*

committing acts which constitute the essential elements of — (I) a crime involving moral

turpitude . . . is inadmissible." 8 U.S.C. § 1182(a)(2)(A)(i) (emphasis added).  Respondents argue

that a police report reflects that petitioner admitted to a violation of California Penal Code

§ 273.5.  Essentially, respondents rely on petitioner's statement to the police that he pushed his

fiancée while she was allegedly hitting him but that he did not cause her any injury.  Doc. 10-1,

Ex. 1 at 14, 16.[2]  Respondents argue that, in his statement to the police, petitioner admitted to the

essential elements of willful infliction of corporal injury under California Penal Code § 273.5(a).

*See* Doc. 10 at 5–7 (citing *Galeana-Mendoza v. Gonzales*, 465 F.3d 1054, 1059–60 (9th Cir.

2006)).  The immigration judge did not make any such finding.  Respondents nonetheless request

that this Court find that petitioner may be mandatorily detained under section 1226(c)(1)(A) and

"order remand" to the immigration judge to proceed under section 1226(c)(1)(A).  *Id.* at 5–7.

Respondents' argument is unpersuasive.  Respondents fail to show that petitioner admitted

to conduct meeting the essential elements of California Penal Code § 273.5.  The statement by

petitioner that respondents point to does not establish all elements of a section 273.5 violation.

The essential elements of California Penal Code § 273.5(a) are a: (1) direct application of force

by a defendant on the victim; and (2) a resulting corporal injury.  *People v. Jackson*, 77 Cal. App.

---

[2] While the police report contains substantial allegations against petitioner, it includes only
limited statements by petitioner.  Respondents appear to rely on the following statement by
petitioner, as noted by the interviewing officer:  "I questioned [petitioner] about CV's injuries,
and he relayed to me that it was 'Cap.' [Petitioner] said he never pulled CV by her hair, and he
never caused her injuries on her knees as well. [Petitioner] denied any of this happened.
[Petitioner] said that he pushed CV when she was hitting him, and [petitioner] denied throwing
the water bottle packets at CV."  Doc. 10-1, Ex. 1 at 14.  The report also includes a narrative by
another officer who attended petitioner's interview, which notes: "[Petitioner] denied pulling her
hair, causing her knee injuries, or throwing water bottles at her, claiming her injuries were
fabricated. He admitted to pushing her when she was hitting him."  *Id.* at 16.

1    4th 574, 580 (2000); *see Banuelos-Ayon v. Holder*, 611 F.3d 1080, 1085 (9th Cir. 2010)

2    (following *Jackson*'s holding as to essential elements of crime).  According to the police report,

3    petitioner denied that he caused any injury.  Doc. 10-1, Ex. 1 at 14, 16.  Petitioner therefore did

4    not admit that he had engaged in conduct that caused the victim corporal injury, an essential

5    element of California Penal Code § 273.5(a).[3]

6        Respondents have failed to show any basis to detain petitioner under section

7    1226(c)(1)(A).[4]  Petitioner has not been found guilty of any offense under section 273.5.  In fact,

8    ICE appears to have prevented the state's prosecution of petitioner by detaining petitioner in the

9    courthouse before his criminal case hearing and by not allowing petitioner to appear at the

10   hearing.  Rather than allowing the state prosecution to proceed, ICE chose to detain petitioner on

11   immigration grounds.  Respondents have failed to show any ground for the immigration detention

12   of petitioner based on a domestic violence charge on which ICE has apparently prevented the

13   state from prosecuting petitioner and on which no finding has been made as to petitioner's guilt.

14   In these circumstances, the immigration judge appropriately found that petitioner was entitled to

15   bond consideration under section 1226(a).

16       The Court next considers petitioner's likelihood of success on the merits of his two

17   claims.

18

19   [3] Nor does petitioner's statement appear to be a validly obtained admission for immigration
     purposes:  "[F]or an admission to qualify as having been validly obtained[,]" three requirements
20   must be met: (1) "the admitted conduct must constitute the essential elements of a crime in the
     jurisdiction where it occurred"; (2) the noncitizen making the admission "must have been
21   provided with the definition and essential elements of the crime prior to his admission"; and (3)
     "his admission must have been voluntary."  *Pazcoguin v. Radcliffe*, 292 F.3d 1209, 1216 (9th Cir.
22   2002) (citing *Matter of K,* 7 I & N Dec. 594, 598 (BIA 1957); *Matter of J,* 2 I & N Dec. 285 (BIA
     1945)).  Petitioner's statement to the police does not meet the first requirement, as noted above.
23   Nor have respondents shown that it meets the second requirement, as there is no evidence in the
     record that the police provided petitioner with the definition and essential elements of California
24   Penal Code § 273.5(a) prior to his statement.  *Cf. Pazcoguin*, 292 F.3d at 1216 ("Because
     Inspector Myers failed to provide Pazcoguin with a definition and the essential elements of the
25   crime . . . , the BIA should not have considered Pazcoguin's admission to Inspector Myers.").

26
27   [4] Given this finding, the Court declines to consider petitioner's other argument that, under BIA
     precedent, the immigration judge would have considered the police report to be unreliable
28   evidence and would have given it insignificant weight.

**b.  Petitioner's Likelihood of Success on the Merits**

**i.  Section 1225(b)(2)(A) Does Not Apply to Petitioner.**

Petitioner argues that section 1225(b)(2)(A) does not apply to him, and that the immigration judge correctly concluded on August 27, 2025 that petitioner was entitled to bond consideration under section 1226(a).  Doc. 1 at ¶¶ 55–73.  He requests an injunction preventing section 1225(b)(2)(A) from being applied to him.[5]   In their opposition, respondents fail to address the applicability of section 1225(b)(2)(A) in any meaningful way.  They refer to the issue in a footnote but do not offer any argument as to why section 1225(b)(2)(A) should apply to petitioner.  They have therefore waived this issue.  *See e.g.*, *Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008) (holding party abandons claims by not raising them in opposition to movant's motion); *Jenkins v. Cty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005).

This issue is one of statutory interpretation, and the Court's analysis begins with the text of the statute.  *See Lackey v. Stinnie*, 604 U.S. 192, 199 (2025).

**1.  Statutory Framework**

Two statutory sections govern the detention of noncitizens prior to a final order of removal: 8 U.S.C. §§ 1225 and 1226.  Section 1225 governs the detention of noncitizens seeking admission into the United States.  *See Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018).  Relevant here, section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title."  8 U.S.C. § 1225(b)(2)(A).  "A noncitizen detained under [s]ection 1225(b)(2) may be released only if he is paroled 'for urgent humanitarian reasons or significant public benefit' pursuant to 8 U.S.C. § 1182(d)(5)(A)."  *Gomes v. Hyde*, 25 Civ. 11571, 2025 WL 1869299, at *2 (D. Mass. July 7, 2025).  "Other than this limited exception[,] . . .

---

[5] Based on the BIA's decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), which held that section 1225(b)(2)(A) applies to all noncitizens present in the United States without admission, it is likely that the immigration judge's bond order under § 1226(a) would be reversed by the BIA, as the immigration judge recommended in a subsequent memorandum in light of *Matter of Yajure Hurtado*.  *See* Doc. 10-1, Ex. 8.

1   detention under § 1225(b)(2) is considered mandatory . . . [and] [i]ndividuals detained under

2   § 1225 are not entitled to a bond hearing."  *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH),

3   2025 WL 2371588, at *3 (S.D.N.Y. Aug. 13, 2025).

4          While section 1225 "authorizes the Government to detain certain aliens *seeking admission*

5   *into the country*," section 1226 "authorizes the Government to detain certain aliens *already in the*

6   *country* pending the outcome of removal proceedings."  *Jennings*, 583 U.S. at 289 (emphasis

7   added).  Section 1226(a) sets out the "default rule" for noncitizens already present in the country.

8   *Id.* at 288.  It provides:

9                  On a warrant issued by the Attorney General, an alien may be
                arrested and detained pending a decision on whether the alien is to
10               be removed from the United States. . . . [T]he Attorney General--
                (1) may continue to detain the arrested alien; and
11               (2) may release the alien on--
                (A) bond . . . ; or
12               (B) conditional parole . . . .

13  8 U.S.C. § 1226(a).  "Section 1226(a), therefore, establishes a discretionary detention

14  framework."  *Lopez Benitez*, 2025 WL 2371588, at *3 (internal citations omitted).  An

15  immigration officer makes the initial determination to either detain or release the noncitizen, but

16  after that decision has been made, the noncitizen may request a bond hearing before an

17  immigration judge.  8 C.F.R. § 1236.1(c)(8), (d)(1).  At any such bond hearing, "the burden is on

18  the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does

19  not present a danger to persons or property, is not a threat to the national security, and does not

20  pose a risk of flight.'"  *Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) (citing *In re*

21  *Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).

22                     **2.  Section 1225(b)(2)(A) Does Not Apply to Petitioner.**

23         The BIA's current position is that section 1225(b)(2)(A) applies to all noncitizens present

24  in the United States without admission.  *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).

25  That interpretation of the statute (1) disregards the plain meaning of section 1225(b)(2)(A);

26  (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent

27  amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory

28

1  interpretation and practice.[6]

2      As other courts have concluded, "[f]or section 1225(b)(2)(A) to apply, several conditions

3  must be met—in particular, an 'examining immigration officer' must determine that the

4  individual is: (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) 'not clearly and

5  beyond a doubt entitled to be admitted.'" *Martinez v. Hyde*, No. CV 25-11613-BEM, 2025 WL

6  2084238, at *2 (D. Mass. July 24, 2025); *see also Lopez Benitez*, 2025 WL 2371588, at *5.  As an

7  initial matter, there is no evidence in the record that an "examining immigration officer" made

8  these determinations as to petitioner.

9      While petitioner could be considered an "applicant for admission" because he is an "alien

10  present in the United States who has not been admitted," as defined at 8 U.S.C. § 1225(a)(1),

11  respondents have failed to show that, over 20 years after he entered the country, petitioner was

12  actively "seeking admission."  As the *Lopez Benitez* court noted:  "If, as the government argues,

13  [section] 1225(b)(2)(A) was intended to apply to all 'applicant[s] for admission,' there would be

14  no need to include the phrase 'seeking admission' in the statute."  *Lopez Benitez*, 2025 WL

15  2371588, at *6.  The rule against surplusage counsels that "'every clause and word of a statute'

16  should have meaning."  *See United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S.

17  419, 432 (2023) (quoting *Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883)); *League of California

18  Cities v. Fed. Commc'ns Comm'n*, 118 F.4th 995, 1019 (9th Cir. 2024) ("The rule against

19

---

20  [6] Other district courts have reached a similar conclusion.  *See, e.g.*, *Lopez Benitez v. Francis*, No.
    25-Civ-5937, 2025 WL 2267803 (S.D.N.Y. Aug. 8, 2025); *Martinez v. Hyde*, No. CV 25-11613-
21  BEM, 2025 WL 2084238, at *9 (D. Mass. July 24, 2025); *Gomes v. Hyde*, No. 1:25-cv-11571-
    JEK, 2025 WL 1869299, at *8 (D. Mass. July 7, 2025); *Vasquez Garcia v. Noem*, 2025 WL
22  2549431 (S.D. Cal. Sept. 3, 2025); *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL
    2496379 (E.D. Mich. Aug. 29, 2025); *Kostak v. Trump*, No. 3:25-cv-01093-JE, Doc. 20 (W.D.
23  La. Aug. 27, 2025); Doc. 11, *Benitez v. Noem*, No. 5:25-cv-02190 (C.D. Cal. Aug. 26, 2025);
    *Leal-Hernandez v. Noem*, No. 1:25-cv-02428-JRR, 2025 WL 2430025 (D. Md. Aug. 24, 2025);
24  *Romero v. Hyde*, No. 25-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Arrazola-
    Gonzalez v. Noem*, No. 5:25-cv-01789-ODW, 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025);
25  *Aguilar Maldonado v. Olson*, No. 25-cv-3142, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Dos
    Santos v. Noem*, No. 1:25-cv-12052-JEK, 2025 WL 2370988 (D. Mass. Aug. 14, 2025); *Rocha
26  Rosado v. Figueroa*, No. CV 25-02157, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025), *report and
    recommendation adopted* 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); Doc. 11, *Maldonado
27  Bautista v. Santacruz*, No. 5:25-cv-01874-SSS-BFM, *13 (C.D. Cal. July 28, 2025).

28

1   surplusage generally prohibits [a court] from interpreting [a statute] in a way that 'mak[es] a part

2   of it unnecessary.'" (quoting *NLRB v. Aakash, Inc.*, 58 F.4th 1099, 1105 (9th Cir. 2023)).  DHS's

3   position would make the "seeking admission" language meaningless and violate the rule against

4   surplusage.  *Martinez*, 2025 WL 2084238, at *6; *Lopez Benitez*, 2025 WL 2371588, at *6.

5           "Seeking" means "asking for" or "trying to acquire or gain."  Merriam-Webster

6   Dictionary, https://www.merriam-webster.com/dictionary/seeking.  And the use of a present

7   participle, "seeking," "necessarily implies some sort of present-tense action."  *Martinez*, 2025

8   WL 2084238, at *6.  The term "admission" is defined as "the lawful entry of the alien into the

9   United States after inspection and authorization by an immigration officer."  8 U.S.C.

10  § 1101(a)(13)(A).  And "entry" has long been understood to mean "a crossing into the territorial

11  limits of the United States."  *Hing Sum v. Holder*, 602 F.3d 1092, 1100–01 (9th Cir. 2010)

12  (quoting *Matter of Pierre*, 14 I & N Dec. 467, 468 (1973)).  To piece this together, the phrase

13  "seeking admission" means that one must be actively "seeking" "lawful entry."  *See Lopez*

14  *Benitez*, 2025 WL 2371588, at *7.[7]

15          However, petitioner is not actively "seeking" "lawful entry" because he already *entered*

16  the United States—over twenty years ago.  If anything, petitioner is seeking to *remain* in the

17  United States.  As the *Lopez Benitez* court noted:

18              [S]omeone who enters a movie theater without purchasing a ticket
            and then proceeds to sit through the first few minutes of a film would
19          not ordinarily then be described as "seeking admission" to the
            theater.  Rather, that person would be described as already present
20          there.  Even if that person, after being detected, offered to pay for a
            ticket, one would not ordinarily describe them as "seeking
21          admission" (or "seeking" "lawful entry") at that point—one would
            say that they had entered unlawfully but now seek a lawful means of
22          remaining there.  As § 1225(b)(2)(A) applies only to those
            noncitizens who are actively "seeking admission" to the United
23

24  _____

    [7] This understanding is further buttressed by the fact that "lawful entry" may occur only after
25  "inspection and authorization by an immigration officer," *see* 8 U.S.C. § 1101(a)(13), a process
    that typically must occur at the border or other port of entry.  *See Posos-Sanchez v. Garland*, 3
26  F.4th 1176, 1183 (9th Cir. 2021) (explaining that "inspection and authorization" must "take place
    at a 'port of entry'" for one to be considered to have "lawfully entered").  The regulations that set
27  out "inspection procedures" make clear that inspection is a procedure that occurs at ports of entry.
    *See* 8 C.F.R § 235.1(a) ("Application to lawfully enter the United States shall be made in person
28  to an immigration officer at a U.S. port-of-entry when the port is open for inspection.").

1

2

> States, it cannot, according to its ordinary meaning, apply to [petitioner], because he has already been residing in the United States for more than two years.

3  *Lopez Benitez*, 2025 WL 2371588, at *7; *see also Lopez-Campos v. Raycraft*, No. 2:25-CV-

4  12486, 2025 WL 2496379, at *6 (E.D. Mich. Aug. 29, 2025) ("[S]eeking admission' implies

5  action – something that is currently occurring, and in this instance, would most logically occur at

6  the border upon inspection.").

7      This is consistent with the statutory scheme.  As the Supreme Court noted in *Jennings*,

8  section 1225 applies "at the Nation's borders and ports of entry, where the Government must

9  determine whether an alien seeking to enter the country is admissible."  *Jennings*, 583 U.S. at

10  287.  Section 1225 "authorizes the Government to detain certain aliens *seeking admission* into the

11  country," whereas section 1226 "authorizes the Government to detain certain aliens *already in the*

12  *country* pending the outcome of removal proceedings."  *Id.* at 289 (emphasis added).

13      Application of section 1225(b)(2)(A) to noncitizens already in the country, such as

14  petitioner, would also render superfluous a recent amendment to section 1226(c).  *See Gomes*,

15  2025 WL 1869299, at *5.  Although section 1226(a) sets out a discretionary detention scheme,

16  section 1226(c) provides an exception which mandates detention for noncitizens who have

17  committed certain crimes.  *See* 8 U.S.C. § 1226(c)(1)(E).  Section 1226(c)(1)(E), which was

18  added to the statute in 2025 by the Laken Riley Act, mandates detention for any noncitizen

19  (i) who is inadmissible under section 1182(a)(6)(A)(i) as an "alien present in the United States

20  without being admitted or paroled," *and* (ii) who "is charged with, arrested for, convicted of, or

21  admits" to committing certain crimes.  8 U.S.C. § 1226(c)(1)(E) (emphasis added); *see Gomes*,

22  2025 WL 1869299, at *5 (explaining statutory section).

23      If every "applicant for admission"—which is defined, as relevant here, as an "alien

24  present in the United States who has not been admitted," *see* 8 U.S.C. § 1226(a)(1)—were already

25  subject to mandatory detention under section 1225(b)(2)(A), there would have been no need for

26  the new section 1226(c)(1)(E), which mandates detention for every noncitizen who is "present in

27  the United States without being admitted or paroled" *and* who has been "charged with, arrested

28  for, or admits to" committing certain crimes, *see* 8 U.S.C. § 1226(c)(1)(E).  Applying section

1225(b)(2)(A) would thus render section 1226(c)(1)(E) superfluous.  *See Gomes*, 2025 WL 1869299, at *5; *Lopez Benitez*, 2025 WL 2371588, at *7; *Romero v. Hyde*, No. CV 25-11631-BEM, 2025 WL 2403827, at *11 (D. Mass. Aug. 19, 2025); *Maldonado v. Olson*, No. 25-CV-3142 (SRN/SGE), 2025 WL 2374411, at *12 (D. Minn. Aug. 15, 2025) ("The Court will not find that Congress passed the Laken Riley Act to 'perform the same work' that was already covered by § 1225(b)(2).").

"When Congress acts to amend a statute, [the Court] presume[s] it intends its amendment to have real and substantial effect."  *See Stone v. I.N.S.*, 514 U.S. 386, 397 (1995); *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.").  Section 1226(c)(1)(E) is a detention provision.  If all noncitizens present in the United States without lawful admission were subject to mandatory detention under section 1225(b)(2)(A) already—as *Matter of Yajure Hurtado* concluded—section 1226(c)(1)(E) would be superfluous.  *Maldonado*, 2025 WL 237441, at *12 ("If § 1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless.").

The only detention provision that could have applied to petitioner is the "default rule" of section 1226(a), as initially found by the immigration judge, which "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings."  *Jennings*, 583 U.S. at 288–89.  The government previously applied section 1226(a) to noncitizens, such as petitioner, who entered the country without admission.  *See Matter of Yajure Hurtado*, 29 I&N Dec. 216 n.6 (B.I.A. 2025) ("We acknowledge that for years Immigration Judges have conducted [section 1226(a)] bond hearings for aliens who entered the United States without inspection."); Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination."); *Martinez*, 2025 WL 2084238, at *6.  While

1    divining the meaning of a statute belongs to the "independent judgment" of the courts, "'the

2    longstanding practice of the government'—like any other interpretive aid—'can inform [a

3    court's] determination of what the law is.'"  *Loper Bright Enters. v. Raimondo*, 603 U.S. 369,

4    385–86, 412 (2024) (quoting *NLRB v. Noel Canning*, 573 U.S. 513, 525 (2014)).  The Court finds

5    that the government's longstanding practice, under which section 1226(a), and not section

6    1225(b)(2)(A), would have applied to petitioner's circumstances, is consistent with the text and

7    statutory scheme.  *See, e.g.*, *Lopez Benitez*, 2025 WL 2371588, at *8 (reaching same conclusion).

8           Applying section 1225 to those stopped at the border and section 1226 to those already in

9    the country is also consistent with the different due process considerations at issue for noncitizens

10   encountered at the border or ports of entry, versus for noncitizens who have established residence

11   in this country.  As the court in *Romero* noted:

12              "[O]nce an alien enters the country, the legal circumstance changes,
               for the Due Process Clause applies to all 'persons' within the United

13             States, including aliens, whether their presence here is lawful,
               unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S.

14             678, 693, 121 S. Ct. 2491, 150 L. Ed.2d 653 (2001).  "It is therefore
               reasonable to read these statutes 'against [that] backdrop.'" *Hewitt v.*

15             *United States*, 145 S. Ct. 2165, 2173 (2025)).

16   *Romero*, 2025 WL 2403827, at *12–13; *cf. Lopez-Campos*, 2025 WL 2496379, at *9–10 (finding

17   that the government's application of section 1225(b)(2)(A) in similar circumstances violated

18   detainee's due process rights).

19          In sum, the Court concludes that petitioner has shown a likelihood of success on his claim

20   that he is not subject to mandatory detention under section 1225(b)(2)(A).

21                    **ii.  The Automatic Stay of 8 C.F.R. § 1003.19(i)(2) Violates Procedural**

22                         **Due Process As Applied to Petitioner.**

23          Petitioner next argues that the automatic stay of 8 C.F.R. § 1003.19(i)(2) violates

24   procedural and substantive due process, both facially and as applied.  Doc. 2-4 at 11.

25   Respondents do not offer any substantive argument in response and have therefore waived this

26   issue for purposes of this motion.  *See* Doc. 10; *Shakur*, 514 F.3d at 892.  The Court will limit its

27   discussion to petitioner's as-applied procedural due process challenge, because petitioner would

28   obtain the relief he is seeking on this motion if the Court grants relief on his as-applied challenge.

1    The automatic stay regulation provides:

> In any case in which DHS has determined that an alien should not
> be released or has set a bond of $10,000 or more, any order of the
> immigration judge authorizing release (on bond or otherwise) shall
> be stayed upon DHS's filing of a notice of intent to appeal the
> custody redetermination (Form EOIR–43) with the immigration
> court within one business day of the order, and, except as otherwise
> provided in 8 CFR 1003.6(c), shall remain in abeyance pending
> decision of the appeal by the Board.

8 C.F.R. § 1003.19(i)(2).[8]

The District Court for the District of Nevada's analysis in *Herrera v. Knight*, No. 2:25-CV-01366-RFB-DJA, 2025 WL 2581792, at *9 (D. Nev. Sept. 5, 2025), is instructive and the Court adopts its reasoning here. In that case, three petitioners had been granted bond by immigration judges after establishing that they were neither a danger nor flight risk, but each petitioner was denied release when DHS filed a notice of intent to appeal, invoking the automatic stay regulation. *Id.* at *1–4. The court granted the petition, finding that the automatic stay regulation violated substantive and procedural due process, both facially and as applied to each petitioner. *Id.* at *8–13; *see also Silva v. Larose*, No. 25-CV-2329-JES-KSC, 2025 WL 2770639, at *3 (S.D. Cal. Sept. 29, 2025) (following *Herrera*'s reasoning and ruling similarly).

Courts to address this issue have begun by noting that, for due process purposes, invoking the automatic stay "is a separate act of detention" from the initial act of detaining a noncitizen suspected to be in the country illegally. *Silva*, 2025 WL 2770639, at *3. Both the initial act and subsequent act "require valid authority and due process." *Herrera*, 2025 WL 2581792, at *9. The initial act of detention was authorized by 8 U.S.C. § 1226(a). *See id.* But § 1226(a) detention was no longer authorized once the immigration judge granted petitioner release on bond. *See id.* The government therefore turned to 8 C.F.R. § 1003.19(i)(2) to detain petitioner pending the government's appeal to the BIA. *See id.* As explained below, the Court finds that

---

[8] DHS may alternatively seek a discretionary stay pursuant 8 C.F.R. § 1003.19(i)(1), which requires approval from the BIA. *See* 8 C.F.R. § 1003.6(c)(4). The regulation also sets forth a procedure by which DHS may request an emergency stay of an immigration judge's custody determination from the BIA, which initiates expedited preliminary review by the BIA to determine whether a stay is warranted based on the individual circumstances of the detainee and the merits of DHS's appeal. *See* 8 C.F.R. § 1003.19(i)(1).

1    this act of detention violates procedural due process as applied to petitioner.

2            To determine whether "detention violates procedural due process, courts apply" the

3    *Mathews* factors.  *Herrera,* 2025 WL 2581792, at *9.  Those factors are:

> [T]he private interest that will be affected by the official action;
> second, the risk of an erroneous deprivation of such interest through
> the procedures used, and the probable value, if any, of additional or
> substitute procedural safeguards; and finally, the Government's
> interest, including the function involved and the fiscal and
> administrative burdens that the additional or substitute procedural
> requirement would entail.

8    *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

9            The private interest here is petitioner's interest in freedom from detention.  That interest

10    "lies at the heart of the liberty that [the Due Process] Clause protects."  *Zadvydas v. Davis*, 533

11    U.S. 678, 690 (2001).  "In our society liberty is the norm, and detention prior to trial or without

12    trial is the carefully limited exception."  *United States v. Salerno*, 481 U.S. 739, 755 (1987).  As

13    the court found in *Herrera*:

> [T]he automatic stay necessarily always infringes on a noncitizen's
> fundamental right to freedom from Government detention . . . .
> Petitioners' as applied challenge is further bolstered by the
> individualized harms attendant to their incarceration—including
> being separated from their families, which in two cases includes
> minor children who require specialized medical treatment and care,
> their employment and ability to earn an income (in one case as the
> sole provider for their family), and their deep community ties based
> on their decades of residence in the United States.

19    *Id.* at *10.  Similarly, here, petitioner's detention pursuant to the automatic stay regulation

20    prevents him from being reunited with his fiancée and two-year-old son, from working to support

21    them, and from continuing to pursue his GED, even though a neutral decisionmaker already

22    found that he was not a flight risk or danger.  This private interest is substantial.

23            As for the second *Mathews* factor, the "automatic stay provision creates an extreme risk of

24    erroneous and arbitrary confinement" for several reasons.  *Id.*  "First, the text of the regulation

25    provides no identifiable standard that would guide any purported due process procedures."  *Id.*

26    The regulation may be invoked by DHS "[i]n any case in which DHS has determined that an alien

27    should not be released . . . ."  8 C.F.R. § 1003.19(i)(2).  "Such an undefined and subjective

28    standard clearly creates a likelihood of arbitrary and capricious application."  *Herrera*, 2025 WL

1    2581792, at *10.  Additionally, the automatic stay harms only "those detainees who have already

2    prevailed in a judicial hearing." *Günaydin v. Trump*, 784 F.Supp.3d 1175, 1187 (D. Minn. 2025).

3    The "challenged regulation permits an agency official who is also a participant in the adversarial

4    process to unilaterally override" a neutral decisionmaker's finding, without making any findings

5    of her own.  *Id.*  And with regards "to the probable value of additional procedure" to prevent an

6    erroneous deprivation of liberty, "it is not difficult to conclude that *any* additional procedure is

7    valuable [when] the only procedure" that an agency official must follow is "checking a box and

8    filing a form."  *Herrera*, 2025 WL 2581792, at *11.  Furthermore, "this unilateral stay stands in

9    contrast to the ordinary requirements of overriding a judge's order pending appeal, which requires

10   a showing of, *inter alia*, a likeliness of success on the merits of the appeal and irreparable injury

11   in the absence of a stay."  *Id.* at *11 (citing *Nken v. Holder*, 556 U.S. 418, 426 (2009)).  As in

12   *Herrera*, "[t]he Court thus finds the automatic stay presents a conflict of interest in conferring

13   unreviewable discretionary authority in the same prosecuting agency official that makes

14   erroneous deprivation not just a risk, but likely."  *Id.*

15        Turning to the final *Mathews* factor, the Court notes that the government's interests in

16   "protecting the public from dangerous criminal" noncitizens and preventing noncitizens from

17   fleeing are "interests of the highest order."  *Rodriguez Diaz*, 53 F.4th at 1208.  But those interests

18   are adequately protected by having a neutral decisionmaker evaluate whether a noncitizen

19   presents those risks.  *Herrera*, 2025 WL 2581792, at *11.  A neutral decisionmaker did so here

20   and found that those interests did not justify petitioner's detention.  "Further, Respondents can

21   continue to preserve the BIA's authority and limit the necessity of judicial intervention by using

22   existing regulatory procedures to seek an emergency stay from the BIA," as set out in 8 C.F.R.

23   § 1003.19(i)(1).  *Id.*  "Finally, the use of already existing alternate procedures cannot be construed

24   as a fiscal or administrative burden on the Government as such alternative procedures exist and

25   are familiar to the Government."  *Id.*

26        Accordingly, each of the *Mathews* factors shows that invocation of the automatic stay

27   regulation likely violates procedural due process as applied to petitioner.

28

### c.  Irreparable Harm

Turning to the second *Winter* factor, petitioner has established that he will be irreparably harmed absent a preliminary injunction.  Under the BIA's current interpretation of the immigration statutes and without injunctive relief from a federal court, "ICE [would] remain[] free to subject [petitioner] to mandatory detention under section 1225(b)(2), a provision that is not applicable to [him], and provide [him] with no additional process to challenge [his] detention." *Valencia Zapata v. Kaiser*, No. 25-CV-07492-RFL, 2025 WL 2741654, at *12 (N.D. Cal. Sept. 26, 2025).  "Obviously, the [unlawful deprivation] of liberty is a . . . severe form of irreparable injury."  *Ferrara v. United States*, 370 F. Supp. 2d 351, 360 (D. Mass. 2005).  Thus, the misapplication of section 1225(b) causes "immediate and irreparable injury."  Doc. 11 at 9, *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01874-SSS-BFM (C.D. Cal. July 28, 2025); *Valencia Zapata*, 2025 WL 2741654, at *12.

Additionally, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury."  *Hernandez*, 872 F.3d at 994 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)).  "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)).  Given the Court's conclusion that petitioner is likely to succeed on the merits of his claim that the automatic stay provision violates his due process rights, petitioner faces irreparable harm absent a preliminary injunction

### d.    Balance of Hardships and Public Interest

When the government is the nonmoving party, "the last two *Winter* factors merge."  *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal citations omitted).  Although the government has a strong interest in enforcing the immigration laws, the government "cannot reasonably assert that it is harmed in any legally cognizable sense" by being compelled to follow the law.  *Zepeda v. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983).  Respondents argue in opposition that they should be allowed to detain petitioner based on a different provision—8 U.S.C. § 1226(c)(1)(A)—even though the immigration judge did not rely on that provision and instead

1  found petitioner entitled to bond under section 1226(a).  But, as addressed above, respondents fail

2  to present any basis on which the Court could find section 1226(c)(1)(A) applicable to petitioner

3  at this time.  The Court finds that the balance of hardships tips sharply in petitioner's favor.

4      The public interest also weighs in petitioner's favor.  "The public has a strong interest in

5  upholding procedural protections . . ., and the Ninth Circuit has recognized that the costs to the

6  public of immigration detention are staggering."  *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL

7  1676854, at *3 (N.D. Cal. June 14, 2025) (citing *Jorge M.F. v. Wilkinson*, No. 21-CV-01434-JST,

8  2021 WL 783561, at *3) (N.D. Cal. Mar. 1, 2021).

9      **e.   Remedy**

10      The purpose of a preliminary injunction is to return the parties to the status quo ante,

11  which is "not simply [] any situation before the filing of a lawsuit, but instead [] 'the last

12  uncontested status which preceded the pending controversy.'"  *GoTo.com, Inc. v. Walt Disney*

13  *Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000).  The immigration judge ordered petitioner released on

14  bond under § 1226(a), and the government then turned to the automatic stay regulation and

15  prevented petitioner from posting bond.  The last uncontested status would be the moment before

16  petitioner was unlawfully detained under the automatic stay regulation and prevented from

17  posting bond.  The Court finds that petitioner's immediate release, subject to petitioner thereafter

18  timely posting the bond, is appropriate in these circumstances.

19  **V.   Conclusion and Order**

20      Accordingly, the motion for preliminary injunction, Doc. 2, is GRANTED.  The Court

21  ORDERS that respondents release petitioner immediately.  Within ten days of receiving notice

22  from the government that the payment system will accept petitioner's payment of the bond,

23  petitioner SHALL post the $2,500 bond, as ordered by the immigration judge on August 27,

24  2025.

25      Respondents are ENJOINED and RESTRAINED from re-detaining petitioner under 8

26  U.S.C. § 1225(b) or 8 U.S.C. § 1226(c)(1)(A), unless and until petitioner is convicted of a

27  qualifying criminal offense or his removal order is upheld by the Ninth Circuit.  If the

28  government seeks to re-detain petitioner under section 1226(a) and its implementing regulations,

1  it must provide no less than seven (7) days' notice to petitioner and must hold a pre-deprivation

2  bond hearing before a neutral arbiter, at which petitioner's eligibility for bond must be

3  considered.

4       The portion of the Court's October 21, 2025 minute order, Doc. 4, regarding the removal

5  or transfer of petitioner is vacated as moot.

6       The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  Courts

7  regularly waive security in cases like this one.  *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir.

8  2011); *Garcia*, 2025 WL 1676855, at *3; *Pinchi*, 2025 WL 1853763, at *4.

9       Respondents may file an additional brief related to the merits of the petition within 30

10  days, and petitioner may file a reply brief within 15 days of respondents' brief.  Alternatively, the

11  parties may stipulate to a different briefing schedule or to submitting the petition on the merits

12  based on the current record.

13

14  IT IS SO ORDERED.

15     Dated:   November 11, 2025

16                                              UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28